IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRIAN H.,[1]

        Plaintiff,

v.

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Civ. No. 1:18-cv-01731-MC

**OPINION & ORDER**

McSHANE, District Judge:

Plaintiff Brian H. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On February 4, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning October 4, 2011. Tr. 15. The claim was denied initially and upon reconsideration. *Id.* At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on April 5, 2018. *Id.* On May 30, 2018, the ALJ issued a decision finding Plaintiff not disabled. Tr. 24. The Appeals Council denied Plaintiff's

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, October 4, 2011, through his date last insured, December 31, 2016. Tr. 17. The ALJ determined Plaintiff had the following severe impairments: cervical degenerative disc disease status post fusions; obesity; post-traumatic stress disorder ("PTSD"); and affective disorder. *Id.* The ALJ determined Plaintiff's impairments did not meet or equal a listed impairment. Tr. 18.

The ALJ determined Plaintiff had the RFC to perform light work with the following additional restrictions: he can only frequently climb ramps, and stairs, never climb ladders, ropes, and scaffolds, frequently stoop, occasionally kneel and crouch, and never crawl; he can occasionally reach overhead bilaterally and frequently handle and finger bilaterally; he must avoid all exposure to hazards, such as dangerous machinery and unprotected heights; his is to have no exposure to vibrations; and he can have only occasional interaction with the general public. Tr. 19.

The ALJ noted Plaintiff was 52 years old on his date last insured and has at least a high school education and is able to communicate in English. Tr. 23. The ALJ found Plaintiff was able to perform past relevant work as a general clerk. Tr. 22. In the alternative, the ALJ determined Plaintiff was able to perform work as a marker, a router, and a garment sorter. Tr. 23. As a consequence, the ALJ determined Plaintiff was not disabled. Tr. 24.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) improperly weighing the medical opinion evidence; and (3) improperly rejecting lay witness testimony concerning Plaintiff's limitations.

### I.     Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting his subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the

second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, unexplained failure to seek treatment, or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, Plaintiff testified that he left his last employer in 2011 after becoming "real snappy" due to his pain and that he was "basically laid off, or forced to resign." Tr. 41. Plaintiff filed for unemployment and received benefits for almost a year. Tr. 41-42. When asked whether he looked for full-time work during this period, Plaintiff responded "I did not. My neck was getting so bad." Tr. 42. On further questioning, Plaintiff testified that he sent out resumes looking for desk jobs and only had one interview. *Id.* As part of the unemployment process, Plaintiff testified that he certified that he was "ready, willing, and able to work" during the period of his unemployment benefits. Tr. 43.

In terms of physical limitations, Plaintiff testified that he suffers from neck pain on a daily basis and that it feels "like someone is stabbing a knife into my spine and twisting it." Tr. 45. Plaintiff testified that his pain became worse as time went on and that he does not take pain medication when he needs to drive. Tr. 46. Plaintiff testified that his pain is worst in the morning

and that he experiences numbness in his hands. Tr. 49. Plaintiff testified that he cannot sit up for more than half an hour without pain and that his pain ranges from a six on average to a ten if he's active. *Id.* Plaintiff testified that his neck pain makes it difficult for him to look down and impossible for him to look to the left. Tr. 54. He has difficulty standing and walking as a result of his neck pain. Tr. 72. Plaintiff also testified that he experiences severe headaches lasting for three to four days. Tr. 52.

Plaintiff takes Norco for pain. Tr. 52-53. Plaintiff testified an examining neurologist recommended that he discontinue Norco in order to treat Plaintiff's headaches, but Plaintiff continued to use Norco in order to control his neck pain. *Id.* Plaintiff testified that he also manages his pain by lying back on pillows and watching television during the day. Tr. 54-55. Plaintiff will also use ice and topical lidocaine for pain management. Tr. 55. Plaintiff has had a series of surgeries to treat his neck pain and testified that he has experienced little improvement. Tr. 55-56. Plaintiff testified that in addition to pain medication, he takes nerve blockers, muscle relaxants, medication to aid in urination, and blood pressure medication. Tr. 61-62. Plaintiff testified that his medication causes him to have difficulty concentrating and that certain medications cause drowsiness. Tr. 62.

In terms of his mental functioning, Plaintiff testified that his "brain just gets foggy" and he has difficulty with memory and concentration. Tr. 58. Plaintiff testified that his physician referred him to a specialist in Portland, Oregon, for an assessment, but Plaintiff did not undergo the assessment because he did not believe that his car would make the trip to Portland. Tr. 53-54, 58-59. Plaintiff testified that he experiences anxiety and PTSD and that he takes medication to manage those conditions. Tr. 63-64.

The ALJ gave a number of reasons for discounting Plaintiff's subjective symptom testimony. First, Plaintiff had reported a good response to pain medication. Tr. 21. "Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006). In this case, Plaintiff told his treating physician that his neck pain was usually a "9" but that it reduced to 4 or 5 with medication. Tr. 280. The ALJ reasonably considered the effectiveness of Plaintiff's medication in assessing his credibility.

Next, the ALJ noted Plaintiff's non-compliance with treatment recommendations. An "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," is a valid consideration when assessing a plaintiff's subjective symptom testimony. *Tommasetti*, 533 F.3d at 1039. In this case, the ALJ noted that Plaintiff was evaluated for memory loss by a neurologist, "but apparently never followed up on the suggested referrals." Tr. 21; Tr. 388 (Dr. Shaun Rajah referred Plaintiff to a psychiatrist for memory loss, irritability, and headache). Similarly, with regard to his mental limitations, Plaintiff "did not follow through with recommendations for counseling." Tr. 22; Tr. 331 (Dr. Douglas McMahon directed Plaintiff to "get counseling for PTSD,").

At the hearing, Plaintiff testified that Dr. McMahon wanted him to get additional testing in Portland, but his car was not able to make the trip and he had nowhere to stay in Portland and so he didn't get the recommended testing. Tr. 53-54. Plaintiff contends that this suffices to explain his failure to follow the recommended course of treatment. However, the testimony in questions concerns additional testing, not treatment, and there is no explanation for why Plaintiff failed to follow up with a psychiatrist, as directed by Dr. Rajah, or with PTSD counseling, as directed by

Dr. McMahon.  On this record, the Court concludes that the ALJ appropriately considered Plaintiff's failure to seek treatment or follow a prescribed course of treatment.

Third, the ALJ noted that Plaintiff applied for and received unemployment benefits and sought other work, "suggesting that he was not as limited as alleged."  Tr. 20.  "Continued receipt of unemployment benefits does cast doubt on a claim of disability as it shows that an applicant holds himself out as capable of working."  *Ghanim*, 763 F.3d at 1165.  However, a plaintiff's receipt of unemployment benefits is only inconsistent with an allegation of disability when the plaintiff holds himself out as available for full-time work.  *Carmickle*, 533 F.3d at 1162.  When the record does not establish whether the claimant held himself out as available for full-time work, the receipt of unemployment benefits does not constitute substantial evidence.  *Id.*  In this case, Plaintiff denied that he had sought full-time work and there is no evidence contradicting that testimony.  Tr. 42.  Accordingly, the Court concludes that this basis is not supported by substantial evidence in the record.  However, a court need not uphold all the ALJ's reasons for rejecting a plaintiff's subjective symptom testimony, so long as substantial evidence supports the ALJ's ultimate determination.  *Carmickle*, 533 F.3d at 1162-63.

Finally, the ALJ noted that Plaintiff's allegations of disability were not fully supported by the medical record.  Tr. 21-22.  A lack of medical evidence is a valid consideration in the ALJ's credibility analysis, although it "cannot form the sole basis for discounting pain testimony."  *Burch*, 400 F.3d at 681.  In this case, the ALJ acknowledged that, while Plaintiff "did have restricted range of motion in of the neck, an in depth neurological examination was otherwise normal."  Tr. 21; Tr. 386-88 (Dr. Rajah recorded normal findings in October 3, 2016 examination).  The ALJ also noted that "[o]ther examinations fail to support the claimant's alleged upper extremity dysfunction."  Tr. 21; Tr. 268-71 (Dr. McMahon finding neck tenderness and spasm, but

normal muscle strength without spasm or tenderness and "No joint swelling, redness, reduced AROM, or deformity."). The Court concludes that the ALJ appropriately considered the objective medical evidence with respect to Plaintiff's subjective symptom testimony.

On this record, the ALJ provided sufficient clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

## II.     Medical Opinion Evidence

Plaintiff contends that the ALJ erred by rejecting the opinions of treating physician Douglas McMahon, D.O., and treating physician's assistant Jay Burrup, P.A.

### A. Dr. McMahon

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

In this case, Dr. McMahon diagnosed Plaintiff with hypertension, intervertebral disc degeneration, cervical radiculopathy, PTSD, and obesity. Tr. 270. Dr. McMahon's report of Plaintiff's symptoms indicate that Plaintiff presented with neck pain and "persistent PTSD." Tr. 272. Plaintiff reported that his pain was constant and that medication provided 40% relief. *Id.* Plaintiff "[c]ontinues to have flashbacks and have more difficulties dealing with people, especially

strangers." *Id.* On April 20, 2016, Dr. McMahon's objective findings noted Plaintiff's "chronic distress," and "anxious affect with depression and anxiety." Tr. 274. Plaintiff was positive for neck pain and depression, and Dr. McMahon noted that Plaintiff was "nervous/anxious and has insomnia." *Id.* In the neurological assessment, Dr. McMahon noted that Plaintiff was positive for "tingling, sensory change, focal weakness and headaches." *Id.* On May 24, 2016, Dr. McMahon ordered an MRI for Plaintiff which revealed "Degenerative changes and facet arthropathy throughout the cervical spine." Tr. 289-90.

Although his treatment notes include diagnoses and objective findings, Dr. McMahon did not provide a statement of Plaintiff's functional limitations. Plaintiff points to a portion of the treatment notes where Dr. McMahon indicates that Plaintiff sleeps poorly and is unable to sit or stand "for any time," without having to change position or lie down. Tr. 268. This statement is not an objective finding, however, but a summary of Plaintiff's subjective complaints. *Id.* The ALJ mentions Dr. McMahon only briefly, noting Dr. McMahon's diagnoses and prescription for benzodiazepines and an antidepressant. Tr. 22.

An ALJ is not required to discuss all evidence presented but must explain why "significant probative evidence has been rejected." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal quotation marks and citation omitted). The Commissioner contends that because Dr. McMahon did not assess any work-related limitations, the ALJ was not obliged to provide an explanation for rejecting the non-opinion. The Ninth Circuit confronted a similar issue in *Morales v. Colvin*, 534 F. App'x 589 (9th Cir. 2013). In that case, as here, the treating physician did not provide an opinion on the plaintiff's limitations and "[t]hus, there was no uncontradicted medical opinion in the record from [the plaintiff's] treating physician." *Id.* at 590. "The ALJ did not and was not required to recite the medical records in reviewing Morales's

medically determinable impairments," when the record does not reflect "any objective significant probative medical evidence that the ALJ failed to consider in making his determination." *Id.* at 591.

In this case, as in *Morales*, the Court concludes that the ALJ did not err by failing to consider "any objective significant probative medical evidence," with respect to Dr. McMahon's treatment notes.

### B. PA Burrup

As previously noted, the ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. In this case, Mr. Burrup treated Plaintiff on January 11, 2018, following surgery and "advised the patient to avoid bending, twisting, and lifting more than 10 lbs," but noted that he "may gradually resume other activities, using pain as a guide for the next 1 to 2 months." Tr. 450-51. On March 22, 2018, Mr. Burrup found that Plaintiff was "healing well, clinically and on radiographs." Tr. 454.

Although the ALJ does not mention Mr. Burrup by name, he cites the treatment note in his discussion of Plaintiff's neck surgery. Tr. 22. As with Dr. McMahon, Mr. Burrup does not provide an opinion on Plaintiff's functional limitations and so the ALJ was not obliged to expressly discount that opinion. *Vincent*, 739 F.2d at 1394-95; *Morales*, 534 F. App'x at 590-91. The ALJ did not err in his assessment of the medical evidence.

### III. Lay Witness Testimony

Plaintiff asserts the ALJ erred by rejecting the lay witness testimony of Tracy T., Plaintiff's friend and the mother of his child. Lay witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he or she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d

503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting a lay witness's testimony must also be "specific." *Stout*, 454 F.3d at 1054. When "the ALJ's error lies in a failure to properly discuss competent lay witness testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.

In this case, Tracy T. reported that she has known Plaintiff for about 16 years and that she sees him often because of their shared child, "but we don't do much together." Tr. 218. Tracy T. reported that Plaintiff can't retain information and is very forgetful. *Id.* He is in pain all the time and so sitting or standing for long periods of time is difficult. *Id.* He also has severe headaches "all the time." *Id.* She said that Plaintiff does not do much during the day, but that he changes position from sitting to standing while watching television. Tr. 219. She reported that being "around people in general is difficult" for Plaintiff. *Id.* He sleeps poorly due to neck pain and PTSD. *Id.* He needs reminders to do his laundry or get a haircut and he needs a pill box to keep track of his medications. Tr. 220. He can drive, shop for groceries, and manage his own finances. Tr. 221. He stays away from people and doesn't socialize except for interacting with Tracy T. and their son. Tr. 222.

Tracy T. checked boxes indicating that Plaintiff's impairments affect his ability to lift, squat, bend, stand, walk, kneel, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others. Tr. 223. She reported that Plaintiff can walk up to 100 yards before needing to rest. *Id.* He can only pay attention for a couple minutes at a time and can only follow simple written instructions. *Id.* He does not follow spoken instructions well and does not get along with authority figures. *Id.* "He doesn't trust or

communicate well with people because of PTSD." *Id.* He does not tolerate stress or changes in routine. Tr. 224.

The ALJ gave little weight to Tracy T.'s statement. Tr. 21. The ALJ noted that Tracy T.'s report that she sees Plaintiff "often, but we don't do much together," fails "to identify how much time she spends in direct observation of the claimant, but she went on to identify forgetfulness and pain as his limiting factors." *Id.* The ALJ also noted that Tracy T.'s responses were similar to Plaintiff's "and not indicative of an inability to sustain work activity within the residual functional capacity." *Id.*

As discussed in the preceding sections, the ALJ properly discounted Plaintiff's subjective symptom testimony and reasonably applied that same reasoning to Tracy T.'s report. *See, e.g. Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009) (when an ALJ has given clear and convincing reasons for discounting a plaintiff's subjective symptom testimony and rejects similar lay witness testimony, "it follows that the ALJ also gave germane reasons for rejecting her testimony."). The ALJ also reasonably noted that Tracy T.'s report was vague about how much time she spends observing Plaintiff, which undermines her lay witness testimony.

The Court concludes that the ALJ did not err in assessing the lay witness testimony of Tracy T.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this 16th day of April, 2020.

s/Michael J. McShane<br>
MICHAEL McSHANE<br>
United States District Judge